IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PERRY M. WAGLE,              )   Civil No.: 3:11-cv-00049-JE
                              )
           Plaintiff,    )   FINDINGS AND
                              )   RECOMMENDATION
         v.            )
                              )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,  )
                              )
          Defendant.   )
_____)

       James S. Coon
       Swanson Thomas & Coon
       820 SW 2nd Avenue, Suite 200
       Portland, OR 97204

           Attorney for Plaintiff


       S. Amanda Marshall, U.S. Attorney
       Adrian L. Brown, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

Kathryn Ann Miller
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Perry Wagle brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act).

For the reasons set out below, the Commissioner's decision should be affirmed.

### **Procedural Background**

Plaintiff filed applications for DIB and SSI on March 28, 2005, alleging that he had been disabled since March 1, 2003. Those applications were denied initially and upon reconsideration, and are not at issue in the present action.

On February 27, 2006, Plaintiff filed the applications for DIB and SSI upon which this action is based. Though these applications allege disability beginning on March 1, 2003, Plaintiff earned nearly $82,000 in 2003, and later amended his alleged onset of disability date to January 1, 2004.

After his claims were denied initially and on reconsideration, Plaintiff timely requested an administrative hearing. On December 11, 2008, a hearing was held before ALJ Dan Hyatt. Plaintiff and Hanoch Livneh, Ph.D., a Vocational Expert (VE), testified at the hearing.

FINDINGS AND RECOMMENDATION - 2

In a decision filed on January 26, 2009, ALJ Hyatt found that Plaintiff had performed substantial gainful activity after the time that he had alleged disability, and that Plaintiff had been capable of performing work that existed in significant numbers in the national economy while he had not engaged in such activity.  Based upon that conclusion, he denied Plaintiff's application for a period of disability and disability insurance benefits..

Noting that the ALJ had not addressed Plaintiff's application for SSI benefits,  the Appeals Council granted Plaintiff's timely request for review.  In a decision dated  November 19, 2010, the Appeals Council found that Plaintiff had engaged in substantial gainful activity from August 1, 2007 through the date of its decision, adopted the ALJ's finding that Plaintiff was not disabled, and denied Plaintiff's applications for DIB and SSI.  With that action,  the ALJ's decision became the final decision of the Commissioner.

## Background

Plaintiff was born on June 9, 1958.  He was 45 years old at the date of his amended alleged onset of disability, and was 50 years old at the time of the administrative hearing. Plaintiff  has a Master of Science degree in computer science and has past relevant work experience as a software technician and research associate in robotics.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that

the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this

burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  <u>Id.</u>


### Medical Record and Hearing Testimony

Like the parties, I will not summarize the medical record and testimony, but will instead

address relevant portions of the record in the discussion below.


### ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity from January 1, 2004, the amended date of his alleged onset of

disability, to August 1, 2007,  and that he had engaged in such activity since that time.  He found

that Plaintiff had reported earnings of $81,719.67 in 2003, earnings of $1,754.22 in 2004, and

earnings of $60.00 in 2005.  The ALJ found that Plaintiff had returned to work on August 1,

2007, and had earned $10,950.00, an amount that constituted substantial gainful activity, during

2007.  He found that Plaintiff had reported earning $6,412.00 in the first quarter, $6,400.00 in

the second quarter, and $6,600.00 in the third quarter of 2008.  Based upon Plaintiff's testimony

FINDINGS AND RECOMMENDATION - 5

that he had continued to work at that level, the ALJ found that Plaintiff earned approximately

$26,000.00 in 2008.  Based upon these findings, the ALJ concluded that Plaintiff had engaged in

substantial gainful activity  after August 1, 2007, "raising a presumption of the ability to work,"

and he continued the sequential disability analysis only as to the period between January 1, 2004,

and August 1, 2007.

At the second step, the ALJ found that Plaintiff had the following severe impairments: a

major depressive disorder, obstructive sleep apnea, and obesity.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or equaled a presumptively disabling impairment set out in the listings,

20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next found that Plaintiff retained the capacity to perform a full range of work at

all levels, except that he was limited to work involving only simple, repetitive one to three step

tasks and requiring only occasional contact with the public.  He also found that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his impairments were not

credible to the extent that they were inconsistent with the RFC assessment, and that "[h]is

credibility concerning his actual ability to work is comparatively low."

Based upon the testimony of the Vocational Expert (VE), at the fourth step of his

disability analysis, the ALJ found that Plaintiff was unable to perform his past relevant work as a

software technician, faculty agent, and robotics research associate.

Based on the VE's testimony, at the fifth step of his disability analysis, the ALJ found

that, from his alleged onset of disability on January 1, 2004 until he resumed an employment that

constituted substantial gainful activity on August 1, 2007, Plaintiff had retained the functional

capacity required to work as a sandwich maker, a laundry worker, and a janitor.  Based upon that

FINDINGS AND RECOMMENDATION - 6

conclusion, he found that Plaintiff had not been disabled at any time from January 1, 2004, through the date of his decision.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

FINDINGS AND RECOMMENDATION - 7

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of one of his treating doctors and erred in concluding that his statements concerning the severity of his impairments were not wholly credible.

1. **Rejection of Treating Physician's Opinion**

In a letter dated March 15, 2006, Kenneth Ihli, Ph.D., a treating psychologist at Lifeworks Northwest, stated that he had seen Plaintiff since May, 2005, and that he had

> been struck by what appears to be a difficulty in responding to questions or comments in a straightforward way, and this appears to reflect difficulty thinking clearly . . . he seems not to have been very responsive to medications . . . our psychiatrist . . . has provided.  The result of these difficulties has been a marked inability to focus his attention during his sessions with me . . . .  It is not clear to me that he can be effectively employed at this stage, and I do believe he could be considered disabled.

The ALJ stated that Dr. Ihli had opined that Plaintiff  "should be considered disable," and rejected that conclusion.  Plaintiff contends that the ALJ failed to provide the support required for that rejection.

**Opinions of Treating Physicians**

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions,  Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  A treating physician's opinion is not necessarily conclusive as to either a claimant's condition or as to the ultimate question of disability,  Rodriguez, 759 F.2d at 761-62.

FINDINGS AND RECOMMENDATION - 8

**Analysis**

At the outset, I note that Dr. Ihli did not unequivocally opine that Plaintiff was disabled. The ALJ correctly noted that Dr. Ihli had stated that it was not clear that Plaintiff could be "effectively employed" at that time.  However, his assertion that Dr. Ihli believed that Plaintiff "should be considered disabled" may have overstated Dr. Ihli's opinion: Dr. Ihli actually stated that he believed Plaintiff could be considered disabled.  This might indicate that Dr. Ihli was not certain that Plaintiff was disabled.  In addition, given that Plaintiff appeared to have been focused on returning to his programming work during this period, it is not clear whether Dr. Ihli's opinion addressed Plaintiff's ability to perform less mentally challenging work.

Because the opinion that Plaintiff could perform no work was contradicted by other opinions in the medical record, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for its rejection.  Assuming for the purposes of this review that Dr. Ihli intended to unequivocally opine that Plaintiff did not have the functional capacity needed to perform any jobs, the ALJ provided sufficient reasons for rejecting that opinion.

The ALJ began his analysis of Dr. Ihli's opinion by  asserting that Dr. Ihli signed "few" of Plaintiff's treatment records, and that "the records do not show that this professional spent significant time with the claimant."  This is not correct: As Plaintiff correctly notes, medical records show that Dr. Ihli saw Plaintiff nearly twenty times over a ten month period during 2005 and 2006.

However, though he erred in concluding that Dr. Ihli had spent little time with Plaintiff, the ALJ specified a number of other legitimate reasons, which were amply supported by the record, for rejecting the assertion that Plaintiff had been disabled when Dr. Ihli offered his

FINDINGS AND RECOMMENDATION - 9

opinion.  The ALJ correctly noted that Dr. Ihli's March, 2006 opinion was inconsistent with treatment notes, including some of Dr. Ihli's own records, showing both that Plaintiff's condition was improving and that he retained the functional capacity required to work.  The ALJ correctly noted that treatment records predating Dr. Ihli's opinion indicated that Plaintiff was fully oriented, demonstrated tangential thought process and content, had appropriate affect, showed intact memory and normal speech, demonstrated only minimally impaired judgment, and, with "some effort," was able to read technical books.  He correctly noted that a Disability Determination Service summary indicated that Plaintiff retained the capacity to perform  simple routine tasks, and that the Oregon Vocational Rehabilitation Division("VRD") "and the mental health sources working closely with the claimant did not believe that he was disabled, but considered him capable of finding employment in his regular field of work."

The ALJ cited clinical evaluations that were inconsistent with the conclusion that Plaintiff had been unable to perform any work during the period in which he did not engage in substantial gainful activity.  He noted that an evaluation by Gregory Cole, Ph.D., in April, 2005 indicated that Plaintiff was fully oriented; demonstrated organized thought content and processing; showed good insight and judgment; and was engaged and cooperative, able to live independently, and able to carry out a wide variety of activities of daily living.  He noted that Plaintiff had reported that he enjoyed reading and playing computer games, achieved high average scores on tests of intellectual functioning, showed no evidence of loss of ability, and exhibited "only mild problems in the areas of attention and concentration."  The ALJ  noted that Dr. Cole had assessed "a strikingly functional [Global Assessment of Functioning] of 60."  He also cited a consultative evaluation conducted by Joe Wood, Psy.D., in May, 2006, which

indicated that Plaintiff was able to care for himself independently and engage in a wide variety of activities of daily living.

In addition to these evaluations, the ALJ noted that, during the period in question, Plaintiff had been able to work on his resume, compose cover letters, conduct telephone interviews "with firms like Google," and pursue "job leads with Apple and Ambric." He noted that Plaintiff had expressed interest in working for Google "because it could be a route to getting his Ph.D.," and that he had been offered a job with that corporation which he declined.

Though he erred in concluding that Dr. Ihli had only seen Plaintiff a few times, the ALJ provided a number of specific, legitimate reasons for rejecting an opinion that Plaintiff was disabled. These reasons were supported by substantial evidence in the record, and would have been sufficient to support rejection of Dr. Ihli's opinion even if it had been uncontroverted.

## 2. **ALJ's Credibility Determination**

The ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause some of the symptoms he alleged, but that his "allegations and statements concerning the intensity, persistence and limiting effects of symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." He added that Plaintiff's "credibility concerning his actual ability to work is comparatively low."

Plaintiff contends that the ALJ failed to provide legally sufficient support for this credibility assessment.

## **Credibility Analysis**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment that is reasonably expected

to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.

**Analysis**

Plaintiff contends that the ALJ improperly reversed the credibility analysis by first assessing his RFC, and then determining that any of his statements that were inconsistent with that assessment showed that Plaintiff was not credible.  He also contends that the ALJ failed to identify the testimony that he found was not credible.

Plaintiff cites  Glover v. Astrue, 2011 WL 1230045, Slip F&R (D. Or. March 10, 2011) (adopted, March 29, 2011) in support of his assertion that this court has "ruled" that "ALJs may not properly rely on this sort of reverse reasoning – using an RFC to gauge credibility rather than the other way around . . . ."  In Glover, as here, the ALJ had found that the claimant was credible only to the extent that his statements were consistent with the RFC assessment.  The court concluded that the ALJ had reversed "the manner in which she must consider credibility," and

FINDINGS AND RECOMMENDATION - 12

observed that a finding of credibility based upon a claimant's RFC "disregards the role of credibility analysis in determining an RFC and therefore should not be sustained. Id. at *7.

Inclusion of a finding that a claimant "is not credible to the extent his testimony is inconsistent with the RFC" has become a common practice in decisions denying applications for disability benefits. See, e.g., Tilton v. Astrue, 2011 WL 4381745, Slip. Op. at 30 n.5 (D. Or. 2011) (noting frequent appearance of statement in ALJ decisions). This recitation has appeared in most, if not all, the ALJ decisions I have reviewed during the past several years.

There is no doubt that this sort of formulaic recitation is inappropriate and inadequate if an ALJ does not also provide sufficient reasons supporting a finding that a claimant is not wholly credible. See, e.g., Allen v. Astrue, 2012 WL 2921454 at 8 (D. Or. 2012) ("boilerplate" statement that claimant is not credible to extent testimony is inconsistent with RFC used inappropriately in many decisions; does not provide reasons required to discredit testimony). However, in most of the decisions that I have reviewed, the ALJ has not used this "boilerplate" statement to describe the manner in which a claimant's credibility has been evaluated or to explain why a claimant's testimony has been found less than wholly credible, but instead has simply indicated the degree to which the ALJ has found that a Plaintiff's statements are not wholly credible. I have concluded that, though this recitation may add little, its inclusion is not a basis for setting aside a credibility determination that is otherwise sound.

In the present action, the ALJ's "boilerplate" assertion that Plaintiff was not credible to the extent his statements were inconsistent with the RFC cannot be fairly characterized as an explanation of the analytical method employed or reasons supporting the determination that Plaintiff was not wholly credible. Instead, in the context of his thorough review of evidence that was inconsistent with Plaintiff's description of his impairments and limitations, the "boilerplate"

FINDINGS AND RECOMMENDATION - 13

to which Plaintiff objects simply reflects the degree to which the ALJ found Plaintiff was not credible.

Before turning to the ALJ's reasons for discounting Plaintiff's credibility, I note that the ALJ observed that the record included evidence that Plaintiff tended to "give up easily on tasks, to expect others to supply assistance and support [and] some manipulative behavior." Though this might arguably indicate malingering, the ALJ did not explicitly characterize it as such or conclude that Plaintiff had malingered. Under these circumstances, he was required to provide clear and convincing reasons for concluding that Plaintiff was not wholly credible.

Plaintiff contends that the ALJ failed to identify which statements and allegations he found were not credible. I disagree. In his review of the medical evidence, the ALJ left no doubt that it was Plaintiff's assertions that he lacked the mental ability to perform work functions which he found less than fully credible.

The ALJ addressed Plaintiff's allegations of mental impairments in his extensive review of the medical record, and set out clear and convincing reasons for concluding that Plaintiff had overstated his mental impairments. He cited numerous records indicating that Plaintiff was able to carry out extensive  activities of daily living and engage in social interactions that were inconsistent with Plaintiff's allegations of disabling mental impairment. The ALJ cited the average and above average scores on tests of mental function, tests showing no decline in mental functioning, and a GAF score the examining doctor characterized as "strikingly functional" at a time when Plaintiff alleged disabling mental limitations. The ALJ cited a psychological evaluation showing insight, judgment, and thought processing and content which were inconsistent with the disabling limitations Plaintiff described. The ALJ noted that VRD and mental health sources who worked closely with Plaintiff had concluded that he could work in his

FINDINGS AND RECOMMENDATION - 14

regular field, and that Plaintiff had been capable of pursuing job leads and securing an offer for full time employment during the time he alleged that he was disabled.  He noted that Plaintiff had performed substantial gainful activity during a time in which he alleged disability, and that, despite his alleged isolation and difficulty communicating, he had reported that a weekly "gaming night" allowed him an important opportunity to socialize and network.

Inconsistency of a claimant's testimony with the medical records is a legitimate basis for discounting a claimant's credibility.  Carmickle v. Commissioner, 533 F.3d at 1155, 1161 (9th Cir. 2008).  The consistency of a claimant's testimony "both internally and with other information in the case record" is a significant indication of a claimant's credibility.   SSR 97-6p. Daily activities that are inconsistent with alleged symptoms are relevant in assessing credibility. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ here cited significant inconsistencies between Plaintiff's testimony and the medical record, internal inconsistencies in Plaintiff's statements concerning his impairments and activities and inconsistencies between those statements and other evidence in the record, and substantial evidence that Plaintiff engaged in activities of daily living that were inconsistent with Plaintiff's allegations concerning his impairments and functional limitations.  These were clear and convincing reasons for discounting Plaintiff's credibility.

## Conclusion

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 18, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of October, 2012.


    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 16